UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL WOODS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:21-cv-00273-TWP-DML |
| SHERI WILSON, and KNEISER, Dr., | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Sheri Wilson ("P.A. Wilson") and Dr. Martial Knieser[1] ("Dr. Knieser"). Plaintiff Michael Woods ("Mr. Woods") is an inmate at Pendleton Correctional Facility ("Pendleton"). He alleges that P.A. Wilson, a Physician's Assistant at Pendleton, and Dr. Knieser, failed to provide adequate medical care for his symptoms that began after a fire in the prison. He brings claims under the Eighth Amendment and under Indiana tort law. For the reasons stated below, the Motion for Summary Judgment is **granted** as to the Eighth Amendment claims. And with no federal claims remaining in this action, the Court relinquishes jurisdiction over the state law claims.

**I. STANDARD OF REVIEW**

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility

---

[1] Defendant's name was misspelled at the filing of this action and appears incorrectly in the caption, *see generally*, Dkt. 28-2; for purposes of this Order, it is correctly spelled as Knieser.

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017).

## II.     MR. WOODS' UNTIMELY SUMMARY JUDGMENT RESPONSE

As an initial matter, the Court will discuss the timeliness of Mr. Woods' response. P.A. Wilson and Dr. Knieser filed their Motion for Summary Judgment in February 2022. (Dkt. 26.) The original deadline for Mr. Woods' response was March 21, 2022. He did not meet that deadline or timely move for an extension of time. Nevertheless, the Court granted him an extension through May 23, 2022, based on a showing of excusable neglect. (Dkt. 31.) The Court

later granted him two additional extensions, making the deadline June 30, 2022.  (Dkt. 33; Dkt. 35.)  In setting the June 30, 2022 deadline, the Court added, "However, the Court does not anticipate any further extensions of this deadline absent a showing of extraordinary circumstances." (Dkt. 35.)

Mr. Woods did not file his response to the summary judgment motion until July 21, 2022—three weeks after the final deadline, and four months after the original one.  (Dkt. 36.)  Mr. Woods did not move for another extension the June 30, 2022 deadline; nor did he attempt to show that extraordinary circumstances prevented a timely filing.[2]  P.A. Wilson and Dr. Knieser noted Mr. Woods's failure to file a timely response, but they graciously did not move to strike the untimely one.  *See* Dkt. 41 at 6−7.

The Court could strike Mr. Woods' summary judgment response and the attached evidence. *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881 (7th Cir. 2012) ("The district court did not abuse its discretion in granting the defendants' motion to strike Fleming's untimely submitted evidence.").  It will not do so here, but the Court also will not give Mr. Woods any additional opportunities to support that response.

For instance, neither Mr. Woods' Complaint nor the declaration provided in support his summary judgment response is signed under penalty of perjury in compliance with 28 U.S.C. § 1746.  *See* Dkt. 2 at 11; Dkt. 37 at 6.  Mr. Woods' assertions in these filings are therefore not evidence that may be considered in assessing the summary judgment motion. *United States ex rel. Doe v. Heart Solution, PC*, 923 F.3d 308, 315 (3d Cir. 2019) ("[B]ecause Mr. Patel's statement

---

[2] The Court notes that Mr. Woods' response and declaration include the date "6-30-22" next to the signature line. However, Mr. Woods has provided no reason to believe that he timely submitted these documents for electronic filing. And his previous submissions have been electronically filed on or near the signature date, indicating that the prison law library filed them with the Court shortly after receiving them. *See*, *e.g.*, Dkt. 34 (signed and filed on June 2, 2022); Dkt. 32 (signed and filed on May 20, 2022); Dkt. 30 (signed April 15, 2022, and filed April 20, 2022); Dkts. 1, 2, and 3 (signed January 26, 2021, and filed February 2, 2022).

was both unsworn and not given under the penalty of perjury, it was insufficient to create an issue of fact on summary judgment."); *see* Fed. R. Civ. P 56 advisory committee's note ("A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement **subscribed in proper form as true under penalty of perjury** to substitute for an affidavit." (emphasis added)); *cf. Jajeh v. County of Cook*, 678 F.3d 560, 568 (7th Cir. 2012) (declining to decide whether district court properly disregarded unsworn declaration not made under penalty of perjury).

That said, while the Court will not strike the untimely, unsworn response, it will not allow Mr. Woods an opportunity to supplement his response with a properly verified declaration. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; [or] (2) consider the fact undisputed for purposes of the motion.").

### III.  FACTUAL BACKGROUND

Because P.A. Wilson and Dr. Knieser have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Woods has been diagnosed with asthma and prescribed an inhaler. (Dkt. 28-2, ¶ 5). But Mr. Woods believes he does not "actually have asthma-asthma," but he was given an inhaler when he was at Wabash Correctional Facility because he would "[sometimes] run out of breath … walk[ing] … [the] long walk to … chow." (Dkt. 28-4 at 10). He contends he rarely used the inhaler because it made his symptoms worse. *Id.*

In the early morning of September 9, 2020, there was a fire in one of the cells of Mr. Woods' dorm. Prison staff did not notice the fire for 45 minutes to an hour. When officials did notice the fire, inmates were evacuated to the chow hall for three hours before returning to the dorm.

On September 9, 2020, Mr. Woods submitted a healthcare request form in which he reported that the fire has caused him to "inhale deadly chemical toxins" and he was experiencing headaches, difficulty breathing, chest pain, and dizziness. (Dkt. 38-1 at 1.) He also reported that he "blew [his] nose and had black soot mixed in with it" and "I have asthma and am afraid to use my inhaler due to dizziness and lightheadedness." *Id*. A few days later, on September 13, 2020, Mr. Woods filed a second healthcare request form reporting burning in his throat, vomiting, and burning in his chest. *Id.* at 2.

A nurse treated Mr. Woods on September 18, 2020 after he stated that he was having respiratory symptoms after a fire. (Dkt. 28-1 at 1.) The nurse noted that his lungs sounded clear and that he did not report any symptoms other than respiratory issues. *Id.* at 3. The nurse referred Mr. Woods to a physician for further evaluation. *Id.* Another nurse treated him on September 20, 2020, and noted no changes in his symptoms. *Id.* at 4.

On September 23, 2020, P.A. Wilson treated Mr. Woods at a chronic care visit (for diabetes). At that visit, Mr. Woods reported chest tightness resulting from the fire. *Id.* at 6-10. P.A. Wilson ordered an EKG and instructed Mr. Woods on proper inhaler use. *Id.* The EKG results did not indicate any injury.[3] (Dkt. 38-1 at 7.) P.A. Wilson prescribed Tums for the burning in Mr. Woods' chest and throat. (Dkt. 28-1 at 10; Dkt. 38-1 at 9.) Mr. Woods purchased naproxen from the prison commissary to treat his headaches. (Dkt. 28-4 at 12, 45:11−14.)

---

[3] Mr. Woods' EKG report indicates "Nonspecific T wave abnormality" and "Abnormal ECG." (Dkt. 38-1 at 7.) But Dr. Knieser attests that the results were normal, (Dkt. 28-2, ¶ 8), and Mr. Woods puts forth no evidence to suggest that the results of his EKG indicate any type of injury.

Dr. Knieser also treated Mr. Woods on September 23, 2020, and he ordered an x-ray, which also did not show any injury. (Dkt. 28-2, ¶ 8; Dkt. 38-1 at 8.)

Mr. Woods submitted a healthcare request form on September 29, 2020, and a grievance on October 2, 2020, both indicating that he had not received the Tums or any treatment for his headaches. (Dkt. 38-1 at 8.) By October 2020, Mr. Woods was not vomiting anymore, and he had headaches only "here and there." *Id.*, Dkt. 28-4 at 12, 44:14. His primary symptoms were "the burning and stuff that [he] was having in [his] lungs and chest and the pressure [he] was having in [his] chest and diarrhea." *Id.*, Dkt. 28-4 at 12, 44:17−19. Mr. Woods is unsure of when his symptoms stopped: "I don't even know if it went to January [2021]. It might not even be in December [2020]." *Id.* at 8, Dkt. 28-4 at 8, 26:24−27:2.

There is no evidence in the record that Mr. Woods submitted any healthcare request forms after September 2020 complaining about any of these symptoms. *See* Dkt. 28-3, ¶ 15. P.A. Wilson treated Mr. Woods at chronic care visits in October, November, and December 2020, but he did complain about symptoms related to the fire. *Id.*; *see also id.*, ¶¶ 10−11 (attesting that Mr. Woods did not report any chest pain or shortness of breath at the visits in October and November 2020).

## IV. **DISCUSSION**

Mr. Woods has sued the Defendants under the Eighth Amendment arguing that P.A. Wilson and Dr. Knieser were deliberately indifferent to his serious medical condition. He also brings a claim of negligence under Indiana state law. The Court will first discuss P.A. Wilson's and Dr. Knieser's Eighth Amendment claim.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v.*

*Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

The Defendants do not dispute that complications from smoke inhalation may constitute a serious medical condition. (Dkt. 27 at 13.) They argue only that they were not indifferent to Mr. Woods' reported condition.

Dr. Knieser treated Mr. Woods once during the relevant timeframe, on September 23, 2020. Dr. Knieser reviewed an EKG, listened to Mr. Woods' lungs, and ordered a chest x-ray

which revealed no lung injuries. Based on these assessments, no reasonable jury would find that Dr. Knieser was deliberately indifferent to Mr. Woods' condition. Mr. Woods insists that Dr. Knieser should have determined whether he "was suffering from Covid-19, Cancer, [or] poisoning from the toxic fumes he inhaled". (Dkt. 37 at 4, ¶ 5.) But he has presented no evidence that he actually suffered from any of these conditions. And without such evidence, no reasonable jury could find that Dr. Knieser was deliberately indifferent to that condition. Likewise, a reasonable jury could not find that Dr. Knieser was deliberately indifferent for failing to order "lab work such as blood, urine, and or fecal occult-blood test to properly diagnose and treat the plaintiff for his symptoms." *Id.*, ¶ 6. Mr. Woods has presented no evidence that such tests were warranted. And he has certainly not presented evidence that Dr. Knieser's decision not to order such tests was "blatantly inappropriate or made in the absence of professional judgment." *Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021) (cleaned up).

Similarly, no reasonable jury would find that P.A. Wilson was deliberately indifferent to Mr. Woods' condition. At the September 23, 2020 visit, P.A. Wilson ordered an EKG for Mr. Woods and prescribed Tums for the burning sensation in his chest and throat. At the October, November, and December visits, she did not observe any of the symptoms that Mr. Woods now says he was experiencing during those months. And Mr. Woods points to no evidence that he informed P.A. Wilson of any such symptoms at these visits. *Cf.* Dkt. 28-3, ¶¶ 10−11 (P.A. Wilson attesting that Mr. Woods did not report any chest pain or shortness of breath at his visits in October and November 2020).

Accordingly, the Motion for Summary Judgment is **granted** as to the Eighth Amendment claims against P.A. Wilson and Dr. Knieser.

## V.  STATE TORT CLAIMS

Defendants argue that Mr. Woods has failed to demonstrate the necessary elements needed to prove a negligence claim against them.  Although Defendants admit that they owed a duty to Mr. Woods--specifically to provide and ensure that he received adequate medical care during his incarceration at Pendleton--they assert that they did not breach any duty owed to the Mr. Woods, nor were they the proximate cause of his alleged injuries. (Dkt. 27 at 17.)  As such, the Defendants seek summary judgment as to Mr. Woods' Indiana state-law negligence claim.

Where, as here, "a district court has dismissed all federal claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over" remaining state law claims. 28 U.S.C. § 1367(c). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Electronics v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) (cleaned up). Exceptions to the general rule exist "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (cleaned up).

The Court finds no reason to deviate from the usual practice in this case. The Court has not expended significant resources on the pending state law claims, and the statute of limitations will not have run on those claims. Moreover, it is not absolutely clear to this Court how the pendent claim will be decided and comity favors allowing state courts to decide issues of state law. For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over Mr. Woods' state law negligence claim.

## VI. CONCLUSION

P.A. Wilson's and Dr. Knieser's Motion for Summary Judgment, Dkt. [26], is **GRANTED** as to the Eighth and Fourteenth Amendment claims against them.

The Court exercises its discretion to relinquish jurisdiction over all remaining state law claims. Final judgment consistent with this Order and the screening order of May 11, 2021, shall now issue.

**SO ORDERED**.

Date: 8/19/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael Woods #911570
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
STOLL KEENON OGDEN PLLC
doug.bitner@skofirm.com

Rachel D. Johnson
STOLL KEENON OGDEN PLLC
rachel.johnson@skofirm.com